T.C. Summary Opinion 2006-174

UNITED STATES TAX COURT

CURTIS MUHAMMAD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14743-05S.                 Filed October 24, 2006.

Curtis Muhammad, pro se.

<u>Harry J. Negro</u>, for respondent.

RUWE, <u>Judge</u>:  This case was heard pursuant to section 7463[1] in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's 2002 Federal income tax of $4,279. After concessions by the parties,[2] the issues for decision are whether petitioner can deduct: (1) $6,500 on Schedule A, Itemized Deductions, for cash charitable contributions; (2) $1,800 on Schedule C, Profit or Loss From Business, for legal and professional expenses; (3) $2,400 on Schedule C for rental expenses; and (4) $2,155 on Schedule C for business use of the home.

Some facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. When the petition was filed, petitioner resided in West Chester, Pennsylvania.

Petitioner earned a biomedical engineering degree from a community college in, or about, 1990 and also graduated from Lyons Tech in 1978. While he served in the Air Force, petitioner worked as an accountant. During the taxable year 2002, petitioner worked full time for SEPTA and also worked as a financial adviser for Waddell & Reed.

Petitioner timely filed his 2002 Federal income tax return via electronic filing. Petitioner's return for 2002 was prepared

---

[2] The parties stipulated that the proper mortgage interest and real estate taxes on Schedule A, Itemized Deductions, are $5,143 and $1,178, respectively, and that the proper mortgage interest and real estate taxes on Schedule E, Supplemental Income and Loss, are $4,494 and $1,254, respectively. At trial, petitioner also conceded that he is not entitled to a deduction for a $500 noncash charitable contribution.

by Chalamar Muhammad, petitioner's wife, who worked for Business Management Solutions, Inc. (BMS). Chester Muhammad, Chalamar Muhammad's father and petitioner's father-in-law, owned BMS in 2002. Petitioner claimed Chalamar Muhammad as a dependent on his 2002 Federal income tax return.[3] Respondent issued petitioner a notice of deficiency.

## Discussion

As a general rule, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual issues may shift to the Commissioner where the taxpayer introduces credible evidence and complies with substantiation requirements, maintains records, and cooperates fully with reasonable requests for witnesses, documents, and other information. Petitioner has not met the requirements of section 7491(a) because he has not met the substantiation requirements or introduced credible evidence regarding the deductions at issue.

---

[3] Petitioner reported that his filing status in 2002 was head of household. Respondent did not change petitioner's status in the notice of deficiency. Nevertheless, petitioner testified that he and Chalamar Muhammad were married in 2002, while Chalamar Muhammad testified that they were not married. Chalamar Muhammad also testified that she could not remember the date when she and petitioner married.

Section 6001 and section 1.6001-1(a), Income Tax Regs., require that any person subject to tax or any person required to file a return of information with respect to income, shall keep such permanent books of account or records, as are sufficient to establish the amount of gross income, deductions, credits, or other matter required to be shown by such person in any return of such tax or information. Deductions are strictly a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to the claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A. Charitable Contribution Deductions Claimed on Schedule A

Respondent disallowed a deduction of $6,500 that petitioner claimed as charitable contributions. Respondent argues that petitioner failed to retain adequate records and that the documents provided by petitioner to support cash contributions should be disregarded because they do not constitute credible evidence.

Section 170(a) allows as a deduction any charitable contribution the payment of which is made within the taxable year. Deductions for charitable contributions are allowable only if verified under regulations prescribed by the Secretary. Sec. 170(a)(1). In general, the regulations require a taxpayer to maintain for each contribution one of the following: (1) A

canceled check; (2) a receipt from the donee;[4] or, in the absence of a check or receipt, (3) other reliable written records.  Sec. 1.170A-13(a)(1), Income Tax Regs.  Section 1.170A-13(a)(2)(i), Income Tax Regs., provides special rules to determine the reliability of records on the basis of all the facts and circumstances of the particular case and further provides factors to consider in making this determination, including:  (1) Whether the writing that evidences the contribution was written contemporaneously and (2) whether the taxpayer keeps regular records of the contributions.

Petitioner had a checking account in 2002; however, because he claimed to have made only cash charitable contributions, petitioner provided no canceled checks to substantiate his claimed deductions.  Petitioner testified that the total cash charitable contributions he claimed were based on receipts he received from his mosque, but that he could not provide the receipts because he shredded them.

Petitioner produced two documents to substantiate his charitable contributions.  The first is the computer-generated list of charitable contributions prepared by BMS.  The computer-generated document lists weekly contributions of $130 to Muhammad Mosque No. 12 (the mosque) from January 8 to December 27, 2002

---

[4] A receipt is required to contain the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs.

($6,500 total).  At trial, petitioner testified that this document was inaccurate.[5]  The second is a two-page undated document purportedly from the mosque consisting of a cover letter and a list of total contributions to a variety of mosque funds. At the bottom of the first page of the document there is an address line but white correction fluid has been applied to obscure a telephone number on that line.  The contributions, totaling $6,500, are listed on the second page of the document as follows:

| | |
|---|---|
| SAVIOURS' DAY (FEB) | $2,200.00 |
| NO.2 POOR CHARITY | $1,000.00 |
| OBLIGATORY CHARITY | $1,300.00 |
| MOSQUE NO 12 BLDG FUND | $905.00 |
| LOCAL CHARITY | $565.00 |
| 3 YEAR ECONOMIC PLAN | $530.00 |

This document does not show the dates or amounts of the individual contributions.  Petitioner testified that he received the latter document on May 28, 2006, nearly 4 years after the alleged charitable contributions were made, and only provided it

---

[5] Petitioner had previously submitted another erroneous document to respondent.  Although petitioner eventually conceded that he was not entitled to a noncash charitable contribution deduction, he originally submitted to respondent a letter that was allegedly from the Salvation Army.  The letter is addressed to petitioner and thanks him for donations of furniture and clothing.  Respondent obtained from a supervisor in the Vehicle Donation Program of the Salvation Army a certification of business records declaring that the letter submitted by petitioner purporting to be from the Salvation Army was not genuine.  The certification states that the division of the Salvation Army from which petitioner's letter appears to have been sent does not handle furniture and clothing, but only vehicle donations.

to respondent on June 5, 2006, the day before trial.  The first page indicates that the document was issued by "Sister LaVerne Muhammad, Delaware Valley Regional Secretary."  However, petitioner testified that LaVerne Muhammad is not the current Delaware Valley Regional Secretary.  Petitioner did not provide a statement of charitable contributions from the current regional secretary or any current recordkeeper at the mosque.

Applying the previously mentioned standards for substantiating deductions for contributions, we find that petitioner failed to provide reliable evidence of his purported contributions and failed to meet his burden of proof.  We hold that respondent's determination disallowing petitioner's claimed charitable contribution deduction is sustained.

B.  Business Expense Deductions Claimed on Schedule C

Section 162(a) permits a taxpayer to deduct expenses paid or incurred during the taxable year in carrying on the taxpayer's trade or business and requires a taxpayer to prove that the expenses deducted were:  (1) Paid or incurred during the taxable year; (2) incurred to carry on the taxpayer's trade or business; and (3) ordinary and necessary expenditures of the business.  See sec. 162(a); Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971).

1. Legal and Professional Expenses

Respondent argues that petitioner failed to substantiate his legal and professional expenses because the receipts submitted by petitioner are untrustworthy.

Petitioner produced four sales receipts from BMS, the company that employed petitioner's wife and that was owned by his father-in-law, to substantiate his legal and professional expense deductions.

Although he had a checking account, each BMS receipt indicates a $450 cash payment.

Petitioner testified that the charges on the receipts represented costs incurred while Chester Muhammad helped him set up a limited liability company for his rental real estate activity. The receipts indicate that they were for services including monthly accounting, bookkeeping, and payroll. Petitioner testified that he hired an employee, whom he paid sometimes with both a check and cash and sometimes just with cash. Petitioner issued neither a Form W-2, Wage and Tax Statement, nor a Form 1099 and claimed no deduction for the employee's wages. Petitioner testified that he did not deduct his employee's wages because he did not want the employee to have to pay taxes on them. Petitioner's testimony indicates that although the receipts he received from BMS represent charges for

payroll services, his payments to his only purported employee would not necessitate such services.

Other than the BMS receipts, petitioner failed to produce any substantiation that he actually made payments to his father-in-law or BMS or that the purported payments actually related to a trade or business.  Given the relationship between petitioner and the people who operated BMS, the fact that the payments were allegedly made in cash, and the fact that the receipts indicate that they were for payroll work that would seem unnecessary, we find that petitioner has failed to meet his burden of proof. Respondent's determination disallowing petitioner's claimed legal and professional expense deductions is sustained.

2.   Rental Expenses

Respondent argues that petitioner failed to substantiate the $2,400 rental equipment expense deduction because the invoices submitted by petitioner lack credibility and are generally untrustworthy.  To substantiate his rental expenses, petitioner submitted five invoices from CB Associates indicating that he leased a laptop computer for $3,600 and a printer for $2,400 from January 7 to December 7, 2002, at monthly rates of $300 and $200 for the computer and printer, respectively.[6]  Craig Brown,

_____

[6] The invoice dates and amounts purportedly paid in 2002 are as follows:  January 7-$500; April 7-$1,500; August 7-$2,000; November 7-$1,500; December 7-$500.  The return address for CB Associates on the invoices was incorrect because it had the wrong
(continued...)

petitioner's brother-in-law, owns CB Associates.[7]  Petitioner claimed a deduction for the rental expense of the printer, but not the computer, on his return.  Although the total lease price referenced in the invoices is based on a 12-month lease term, the term referenced on the invoices is for only the 11 months between January 7 and December 7, 2002.

Petitioner had a checking account in 2002 but purports to have paid $6,000 using multiple money orders for the lease of the computer and printer from CB Associates.  Petitioner did not produce any money order receipts or a lease agreement to substantiate the expense he claimed on his return for the lease of the printer.  Petitioner testified that, after 11 months, he returned the computer and printer via mail to his brother-in-law in Houston, Texas.

Bearing in mind the questionable nature of several other documents that petitioner produced in this case, invoices purporting to be from a family member at an address that does not exist are insufficient to substantiate petitioner's rental expense deductions.  We find that petitioner has failed to meet his burden of proof and hold that respondent's determination

_____

[6](...continued)
ZIP Code.

[7] Petitioner initially testified that Craig Brown was his father's son, but he refers to him as his brother-in-law throughout the rest of his testimony.

disallowing petitioner's claimed rental expense deduction is sustained.

### 3. Business Use of Home

Respondent argues that petitioner is not eligible for a business use of home deduction because his residence was not his principal place of trade or business.  If the Court decides that petitioner's residence was his principal place of trade or business, respondent argues that the deductions petitioner claimed in relation to the business use of home, other than mortgage interest and real estate taxes, should be disallowed for a lack of substantiation.  Mortgage interest and real estate taxes on petitioner's home have already been allowed.[8]

Section 280A(a) provides as a general rule that no deduction otherwise allowable to an individual "shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  The seemingly prohibitory rule of section 280A(a) is ameliorated by section 280A(c), which provides exceptions for certain business uses.  As

---

[8] Petitioner submitted to respondent a Form 1098, Mortgage Interest Statement (former Form 1098), in support of mortgage interest expenses of $5,142.69 and real estate taxes of $1,178.11 for petitioner's personal residence.  Petitioner also produced an identical Form 1098 (latter Form 1098), except for the fact that the amount for real estate taxes was changed from $1,178.11 to $2,299.11, an amount which petitioner originally included on Schedule A of his return.  The parties stipulated that the former Form 1098 was correct and the latter Form 1098 was incorrect because it indicated an improper amount for real estate taxes.

relevant herein, section 280A(c)(1) provides that the general rule of section 280A(a) is not applicable to any item to the extent it is allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer, or as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business.  Expenses deducted as a business use of home must be deductible under section 162 or some other Code section. See sec. 280A(a).

Petitioner testified that he used his basement as his home office.  The evidence and testimony available do not indicate that petitioner met with clients or customers in his basement. Therefore, petitioner's deductions for business use of home can only be sustained if he used the basement on a regular basis as the principal place of business for a trade or business.

Petitioner argues that an income statement, which lists operating expenses and which he testified had been created by BMS, was created from a log petitioner kept of his expenses and was averaged over the year.  Petitioner argues that this income statement is sufficient to substantiate his business use of home expenses.  Petitioner testified that from January 2001 to

September 2002, he was being trained as a financial adviser for Waddell & Reed and worked out of an office in Langhorne, Pennsylvania.  After September 2002, petitioner was assigned to a Waddell & Reed district office located in Philadelphia, Pennsylvania, where petitioner had a desk from which to work.

Petitioner also testified that he received assistance from Chester Muhammad in setting up a limited liability company for his rental real estate, but petitioner failed to establish that he actually operated this enterprise from his basement.  In terms of working in a business, petitioner refers mostly to his job as a financial adviser for Waddell & Reed.

The evidence and testimony indicate that petitioner's principal place of business was the office of Waddell & Reed, in Langhorne, Pennsylvania, until September 2002, and in Philadelphia, Pennsylvania, for the rest of 2002.  We find that petitioner has failed to establish that his basement was his principal place of business in 2002.  Because petitioner has failed to meet the requirements necessary to apply a section 280A(c)(1) exception to the general rule of section 280A(a), it is unnecessary to examine whether petitioner substantiated the expenses he deducted in relation to the purported business use of

home.   Respondent's determination disallowing petitioner's claimed business use of home deduction is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.